## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSE GARCIA,
    *Plaintiff,*

    v.

ALTICE TECHNICAL SERVICES, LLC
d/b/a OPTIMUM,
    *Defendant.*

No. 3:21-cv-00522 (JAM)

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jose Garcia used to work as a field services supervisor for defendant Altice

Technical Services, LLC ("ATS"). But ATS fired Garcia after conducting an investigation of a

claim that Garcia had falsified time records.

Garcia has filed this lawsuit alleging that ATS fired him because he is Hispanic and

because of his age. He also alleges claims for negligent misrepresentation and for promissory

estoppel on the ground that the company allegedly misrepresented and promised him for any

misconduct that he would be subject to progressive discipline rather than termination of his

employment.

ATS has moved for summary judgment on all claims. I will grant the motion because

there are no genuine issues of fact remaining to support any of Garcia's claims.

### BACKGROUND

For many years Garcia worked as an at-will employee at ATS, a company that does

installation, repair, and maintenance services for cable television, telecommunications, and

internet service providers.[1] His job as a field services supervisor was to supervise, schedule, and

---

[1] Doc. #42 at 1–2 (¶¶ 1–2, 8–12); Doc. #59 at 1–2 (¶¶ 1–2, 8–12). Most of the citations in this part of the ruling are
to the parties' respective statements of material fact. I deem those facts as set forth by ATS to be true to the extent
that they are admitted by Garcia. I also deem those facts as set forth by ATS to be true to the extent that Garcia

evaluate ATS's field service technicians with respect to responding to service calls from customers, installing service, repairing service problems, and disconnecting service.[2]

Among Garcia's responsibilities was to track and approve the time worked by his subordinates. The company used an electronic time-keeping system called E-time for this purpose.[3] Garcia had the ability to go into E-time and to change the starting or stopping times that had been input by his subordinate field technicians.[4]

In March 2019, an ATS field supervisor—Craig Petruccelli—was told by two of Garcia's field service technicians—Ramon Padro and Vidal Avila—that Garcia had altered their time records so that they would not be paid overtime for working double shifts.[5] A few days later, Petruccelli told Garcia's direct supervisor—Mike Notholt—about the allegations, and Notholt in turn interviewed Padro and Avila who confirmed what they had told Petruccelli and who further reported that Garcia had told them they were not eligible for overtime because they were not productive.[6]

Notholt in turn advised his manager—Michael Wynschenk—and his human resources contact—Josette Mancini—about what Padro and Avila had reported.[7] Wynschenk and Mancini interviewed Garcia who denied that he had changed the hours for Padro and Avila.[8] They also

_____

denies them without citation to record support for the denial or to the extent that Garcia admits them but adds argumentative qualifiers or limitations that are not germane to the facts as asserted by ATS. *See* D. Conn. L. Civ. R. 56(a)(1).

[2] Doc. #42 at 2 (¶¶ 5–6); Doc. #59 at 1 (¶¶ 5–6).

[3] Doc. #42 at 3 (¶ 13); Doc. #59 at 2 (¶ 13).

[4] Doc. #42 at 3 (¶ 16); Doc. #59 at 2 (¶ 16).

[5] Doc. #42 at 4–5 (¶¶ 24–27). Although Garcia's statement of facts denies that Garcia altered the technician's time records, it does *not* deny that Petruccelli was told by Padro and Avila that Garcia had done so. Doc. #59 at 2–3 (¶¶ 24–27).

[6] Doc. #42 at 5 (¶¶ 28, 30–31). Again, Garcia does not deny what Padro and Avila told Notholt but denies that he changed their overtime hours and that he told them they were not eligible for overtime because they were not productive. Doc. #59 at 3 (¶¶ 28, 30–31).

[7] Doc. #42 at 6 (¶ 32). I deem this statement to be true because Garcia's only germane response is that he "was not part of the alleged discussion" between Notholt and Mancini. Doc. #59 at 3 (¶ 32).

[8] Doc. #42 at 6 (¶ 36). The corresponding paragraph of Garcia's statement of facts does not admit, deny, or acknowledge ATS's statement that Garcia denied the allegations. Doc. #59 at 3 (¶ 36).

interviewed Padro and Avila who stated that Garcia had altered their hours, and one of them stated that this had gone on for months.[9] ATS decided to pay Padro and Avila the overtime hours for the dates that they reported had been denied to them by Garcia.[10]

During the course of the investigation, both Padro and Avila reported to company officials that they believed that Garcia was trying to intimidate them. Padro said that Garcia came to his house on a Sunday night to question him about what Padro had told company officials.[11] Although Garcia denies any effort to intimidate Padro, he admits that he went to Padro's house on the Sunday night at issue but claims that he went there while he was running an errand and because he knows Padro socially and had a few beers with him.[12]

Similarly, Avila reported that Garcia drove with him when he was going to the doctor's office to pick up a form and that Garcia asked him about the claims of unpaid overtime.[13] Although Garcia denies any effort to intimidate Avila, he admits that he rode with Avila to the doctor's office.[14] Garcia also admits that he is friends with Padro and Avila and has no reason to believe they had a motive to make up false allegations about him.[15]

Based on the investigation, ATS decided that the information provided by Padro and Avila was accurate and that Garcia had denied them overtime pay.[16] For his part, Garcia denies that the information given by Padro and Avila was accurate but he does not deny that ATS received information from Padro and Avila and determined that it was accurate.[17]

---

[9] Doc. #42 at 7 (¶¶ 39–41). Garcia again denies that he denied overtime to Padro and Avila but does not deny what they told Wynschenk and Mancini. Doc. #59 at 4 (¶¶ 39–41).
[10] Doc. #42 at 8 (¶ 43). Garcia does not deny this statement but claims that if Padro and Avila "were not paid overtime it was not the result of any actions of the Plaintiff." Doc. #59 at 4 (¶ 43).
[11] Doc. #42 at 8 (¶¶ 44, 46).
[12] Doc. #59 at 4 (¶¶ 44–48).
[13] Doc. #42 at 9 (¶ 50); Doc. #59 at 4 (¶ 50).
[14] Doc. #42 at 9 (¶ 51); Doc. #59 at 5 (¶ 51).
[15] Doc. #42 at 9 (¶¶ 49, 52, 53); Doc. #59 at 4–5 (¶¶ 49, 52, 53).
[16] Doc. #42 at 9 (¶ 54).
[17] Doc. #59 at 5 (¶ 54).

Wynschenk recommended to the Vice President of Operations—Chris Connor—that Garcia's employment be terminated.[18] Mancini and his supervisor at the human resources department concurred with the recommendation which was then approved by Connor to terminate Garcia's employment.[19]

Garcia is Hispanic and was 47 years old when ATS terminated his employment.[20] All four of the persons involved in the termination decision are Caucasian and are as old or older than Garcia.[21] The parties disagree whether Garcia's position was filled with Caucasian or Hispanic persons.[22] The record does not reflect that Garcia had a prior disciplinary record, and Garcia states that his annual reviews before he was terminated were "outstanding" and "high achiever" reviews.[23]

According to Garcia, ATS had a progressive discipline policy that "included progressive steps prior to discharge from employment including oral warnings, written warnings, suspension and coaching."[24] ATS admits that it "generally follows progressive discipline," but it is undisputed that this policy was not set forth in writing.[25] ATS's written policies governing employee misconduct allowed for the possibility that an employee who engaged in the type of misconduct as alleged by Padro and Avila would have his employment terminated.[26]

---

[18] Doc. #42 at 10 (¶ 55); Doc. #59 at 5 (¶ 55) (stating in part "[a]dmit that was a claim by Mr. Wynschenk and that accusations were made against Mr. Wynschenk that he was responsible for unethical actions which were 'borderline illegal' but he was not investigated or disciplined").

[19] Doc. #42 at 10 (¶ 56); Doc. #59 at 5 (¶ 56).

[20] Doc. #62 at 1–2 (¶¶ 1–2, 8).

[21] Doc. #42 at 12 (¶¶ 72–75); Doc. #59 at 5–6 (¶¶ 56, 72–75).

[22] Doc. #42 at 10 (¶¶ 59–60); Doc. #59 at 5 (¶¶ 59–60).

[23] Doc. #62 at 3 (¶ 9).

[24] Doc. #15 at 10 (¶ 12). ATS says it follows a progressive discipline "practice"; Garcia says ATS follows a progressive discipline "policy." Doc. #40 at 22; Doc. #59 at 1 (¶ 8). Viewing the facts in the light most favorable to Garcia, I assume for purposes of this ruling that ATS follows a progressive discipline policy.

[25] Doc. #42 at 10 (¶ 62); Doc. #59 at 5 (¶ 62).

[26] Doc. #42 at 10–11 (¶¶ 63–66). Garcia does not dispute the content of the written policies cited and quoted by ATS Instead, he insists that "[a] progressive disciplinary policy would apply to all disciplinary matters and the Plaintiff as a previous manager and supervisor would apply the disciplinary policy to all disciplinary matters." Doc. #59 at 5–6 (¶¶ 63–66).

Garcia alleges that he was investigated and terminated from his job despite the fact that ATS did not conduct an investigation of Wynschenk for alleged wrongdoing. He cites an anonymous posting on a website called "Layoff.com" which stated in part: "between all three of these individuals (JG, CP, MW) we've been asked to do things that aren't always ethical and sometimes borderline illegal."[27] Garcia claims that this posting—presumably written by an ATS employee—accused both him ("JG") and Wynschenk ("MW") of misconduct but that the company chose to investigate only Garcia and not Wynschenk.[28]

Garcia filed two lawsuits in the Connecticut Superior Court, which ATS removed to this Court and which have been consolidated in this action.[29] He alleges that he was fired on the basis of his race (Hispanic) and on the basis of his age (47 years old) in violation of the anti-discrimination protections of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(1).[30] He further alleges claims for common law negligent misrepresentation and promissory estoppel. These common law claims rest on Garcia's contention that ATS previously represented and promised to apply a progressive discipline policy rather than terminating his employment in the event of misconduct.[31] ATS has moved for summary judgment on all claims.[32]

## DISCUSSION

The principles governing review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as

---

[27] Doc. #62 at 7 (¶ 27); Doc. #52 at 12.
[28] Doc. #62 at 7–8 (¶¶ 28–33).
[29] Doc. #15 (common law claims); *Garcia v. Altice Tech. Servs. US, LLC*, 3:21-cv-01002, Doc. #1 (CFEPA claims). *Garcia*, 21-cv-01002, was consolidated with the instant case in August 2021. *See* Doc. #19, *Garcia*, 21-cv-01002.
[30] *Garcia*, 21-cv-01002, Doc. #1 at 9–10 (¶¶ 11–12); *see also* Doc. #42 at 4, 10 (¶¶ 22, 58); Doc. #59 at 2, 5 (¶¶ 22, 58).
[31] Doc. #15 at 7–13.
[32] Doc. #39.

to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).[33]

### *Race and age discrimination*

Garcia alleges a claim for employment discrimination on the ground that he was fired because he is Hispanic and because of his age.[34] At the summary judgment stage of proceedings, a claim for employment discrimination under CFEPA is subject to review under the familiar *McDonnell Douglas* three-part burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Craine v. Trinity Coll.*, 259 Conn. 625, 636–37 & n.6 (2002).

First, a plaintiff like Garcia must establish a *prima facie* case—(a) that he was a member of a protected class (such as being Hispanic or of an older age); (b) that he was qualified for his position; (c) that he suffered an adverse employment action; and (d) that the circumstances of the adverse action give rise to an inference of discrimination on the basis of the plaintiff's protected class status. If the plaintiff carries this burden, then the employer must come forward with a legitimate, non-discriminatory reason for the adverse action. And if the employer does so, then

---

[33] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[34] *Garcia*, 21-cv-01002, Doc. #1 at 7–11 (¶¶ 1–15).

the burden ultimately shifts back to the plaintiff to show that the employer's stated reason is either a pretext or incomplete, such that there remains a genuine fact issue to suggest that the employer's consideration of the plaintiff's protected status was a motivating factor for the adverse action. *See Radwan v. Manuel*, 55 F.4th 101, 130 (2d Cir. 2022); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016).[35]

Here, there is no dispute that Garcia was a member of a protected class both as to his race and his age, that he was qualified for his position, and that he suffered an adverse employment action when he was fired from his job. Nor is there a dispute that ATS has articulated and adduced evidence of a legitimate and non-discriminatory reason for terminating Garcia's employment. Specifically, ATS alleges that Garcia engaged in misconduct by altering two of his subordinates' time records and by trying to intimidate the two subordinates during the course of the company's investigation.

So the real issue is whether there is enough evidence—notwithstanding ATS's stated reasons—to create at least a genuine fact issue that a motivating reason for ATS to fire Garcia was because he was Hispanic or because of his age. I will assume for present purposes that Garcia has carried his initial burden under the *McDonnell Douglas* framework to show an inference of discrimination, and I will focus instead on the ultimate issue of whether Garcia has carried his burden to show a genuine fact issue that race- or age-based discrimination was a motivating factor for ATS's termination of Garcia's employment. *See, e.g.*, *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89 (2d Cir. 2019) (assuming that plaintiff has carried initial

---

[35] I assume for present purposes that the causal standard for a CFEPA claim is whether discrimination was a motivating factor for the adverse decision rather than whether it was a but-for cause of the adverse decision. *See, e.g., Wallace v. Caring Sols., LLC*, 213 Conn. App. 605, 612–26 (2022).

burden and skipping to final stage of the *McDonnell Douglas* inquiry); *Walsh*, 828 F.3d at 75–76 (same).

Evidence of intentional discrimination may come in many forms. *See Vega v Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (noting how a plaintiff may cite "direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination"). Sometimes the evidence is direct. For example, a defendant may make comments that explicitly reveal the defendant's consideration of a plaintiff's protected status (such as race or age). But Garcia does not rely on any direct evidence of discrimination. For example, he does not point to any race-based or age-based comments or to any rule or policy of the company that explicitly took into consideration his race or age.

Other times the evidence of discrimination may be indirect. For example, a jury might infer discriminatory intent if a defendant gives preferential treatment to someone else who is similarly situated to the plaintiff but who does not share the same protected status as the plaintiff. Still, not every employee is similarly situated to another employee. The requirement that another person is similarly situated to the plaintiff means that a plaintiff must show "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010).

Garcia alleges that Wynschenk was not subject to a company investigation despite the fact that both he and Garcia were identified in a website posting on Layoff.com as having engaged in unethical conduct. But the similarities stop there. Because the website posting was anonymous and alleged misconduct only in the vaguest of terms, it is hard to see how the company could have initiated an investigation merely on the basis of the bare allegations of the website posting that Wynschenk—like Garcia—had engaged in some form of unspecified

8

"unethical" and "borderline illegal" conduct. Moreover, unlike with the investigation of Garcia, there is no evidence that specific employees came forward and reported any allegations of misconduct by Wynschenk. Garcia has failed to show that the circumstances underlying the company's decision not to investigate Wynschenk bear a reasonably close resemblance to the circumstances that prompted the company to investigate Garcia.

Garcia argues that discriminatory intent may be inferred from the fact that all of the persons involved in ATS's decision to terminate him were not Hispanic like Garcia. But the Second Circuit has rejected the proposition that the racial makeup of a decision-making panel can raise an inference of discrimination, even when none of the panel members share the plaintiff's race. *See Davis v. Peake*, 505 F. App'x 67, 68 (2d Cir. 2012); *see also Davis v. Peake*, 2011 WL 4407551, at *7 (S.D.N.Y. 2011).

The "[l]aw does not blindly ascribe to race all personal conflicts between individuals of different races," because "[t]o do so would turn the workplace into a litigious cauldron of racial suspicion." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000). Thus, "[t]he mere fact that [supervisors] were of a different race than [plaintiff] … is insufficient to permit an inference of discrimination," because "[u]nder a contrary rule, federal anti-discrimination laws would be implicated every time an employee suffered an adverse employment action at the hands of a supervisor of a different race, religion, sex, national origin, or, conceivably in some cases, age or disability status." *Coulton v. Univ. of Pa.*, 237 F. App'x 741, 747–48 (3d Cir. 2007).[36]

---

[36] Some courts have similarly declined to rely on the fact that the relevant decisionmaker belongs to the *same* protected group as the plaintiff. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (*en banc*) (rejecting "the idea that one member of a group is unlikely to discriminate against another member of the same group" and noting that "the district court erred when it invoked the same-group inference at the summary judgment stage"); *Bailey v. Nexstar Broad., Inc.*, 2021 WL 848787, at *8–9 (D. Conn. 2021) (same and noting that "[t]he fallacy of the same-group inference has been laid bare by credible social science research" which "demonstrates that members of a group discriminate against members of their own racial and ethnic group" because of the pervasiveness of bias in "society at large," although there is evidence that "members of a group are less likely to be bias[ed] against members of their own group"); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.

In any event, if Garcia were right to infer *racial* discrimination merely from the fact that the decisionmakers who decided to terminate his employment were not Hispanic like Garcia, then this would doom his additional claim for *age* discrimination because the record is undisputed that all the persons who were involved with the termination decision were as old as or older than Garcia. The sounder rule is that whether the race, age, or other immutable characteristics of the decisionmaker are the same as or different from those of the plaintiff does not say much one way or another about whether the decisionmaker has or has not engaged in discrimination.

In addition, the investigation here concerned Garcia's alleged falsification of the time records of two Hispanic co-employees. The company ultimately believed the accounts of these two Hispanic employees over that of Garcia and paid them for overtime hours that they claimed had resulted from Garcia's falsification of their time records. If Garcia were right that the company wanted to discriminate against him because he is Hispanic, it makes no sense that the company would do so by deciding to believe and pay more money to two different Hispanic employees.

Garcia alleges that there is a genuine fact issue to suggest that ATS replaced him with a non-Hispanic worker. Even so, "[r]eplacement by a person of a different race may suffice to make out the fourth element of a *prima facie* case under [the *McDonnell Douglas* standard for] Title VII, but without additional evidence of discriminatory intent, it is insufficient at the summary judgment stage." *Percoco v. Lowe's Home Ctrs., LLC*, 208 F. Supp. 3d 437, 445 (D. Conn. 2016) (quoting *Blanke v. Rochester Tel. Corp.*, 36 F. Supp. 2d 589, 597 (W.D.N.Y.

_____

75, 78 (1998) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.") (quoting *Castaneda v. Partida*, 430 U.S. 482, 499 (1977)).

1999)). In other words, no reasonable jury could conclude simply from the fact that the company eventually hired a non-Hispanic employee to fill Garcia's job position that a motivating reason for the company to fire Garcia was because he is Hispanic.

Garcia argues that summary judgment should not be granted because there is a genuine fact issue about whether Padro and Avila told the truth when they claimed that he altered their time records and tried to intimidate them. But Garcia does not dispute that Padro and Avila made these accusations to the company in the first place. Nor does he dispute that it was reasonable for a company like ATS to investigate such allegations and for a company to impose some form of discipline if the accusations were found credible. He also does not point to any irregularity in the investigation process.

So even if at the end of the day the company was wrong to believe Padro and Avila, that does not tend to suggest that the company's reasons for believing Padro and Avila were because of race or age discrimination rather than merely a mistaken judgment. As the Supreme Court has made clear, "a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (internal quotation marks and emphasis omitted).

Similarly, "[a]n employer's good faith *belief* that an employee engaged in misconduct is a legitimate reason for terminating her, and the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination." *Peterson v. Conn. Light & Power Co.*, 2014 WL 7156648, at *6 (D. Conn. 2014). For an at-will employee like Garcia, unless the employer acts for an unlawful reason, "the employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all." *Ibid.* Therefore, the fact that Garcia disputes the truth of the allegations by Padro and Avila that

11

formed the basis for his termination does not mean that there is a genuine fact issue for trial of his discrimination claims.

Lastly, although Garcia believes that he should have been subject to progressive discipline rather than termination of employment, the fact that the company chose to impose a greater sanction than Garcia thought appropriate does not tend to suggest that a motivating reason for the company to fire him was because of Garcia's race or age, especially in the absence of any written or clear and definite progressive discipline policy. *See Percoco*, 208 F. Supp. 3d at 444–45 (noting that company's "failure to engage in progressive discipline may be harsh, but the severity of the punishment alone does not suggest that the reasons for firing her were unworthy of belief or that she was the victim of race or national origin discrimination").

In short, there are no genuine fact issues in this record to support Garcia's discrimination claims. Accordingly, I will grant ATS's motion for summary judgment for the discrimination claims.

### Negligent misrepresentation

Garcia alleges a claim for negligent misrepresentation based on his contention that he was fired in violation of ATS's progressive discipline policy.[37] A negligent misrepresentation claim requires a plaintiff to establish "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Stuart v. Freiberg*, 316 Conn. 809, 822 (2015).

As noted above, it is undisputed that ATS follows an unwritten policy of progressive discipline. But the record is devoid of any evidence that ATS made any kind of written or oral

---

[37] Doc. #15 at 7–12 (¶¶ 1–16).

representation to Garcia that it had such a policy or that it would apply any progressive discipline policy or practice to him. When asked during his deposition "who told [him] that there was a policy whereby you would not be discharged without application of progressive discipline," Garcia answered: "That's a company policy. Nobody directly told me specifically that that's the policy."[38]

To be sure, Garcia has now submitted an affidavit declaring that ATS "represented and promised that the progressive disciplinary policy would be applied in disciplinary matters."[39] But "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014). Therefore, Garcia's negligent misrepresentation claim fails for lack of any evidence to show that ATS made any kind of representation to him about a progressive discipline policy.

In addition, "[t]o survive summary judgment, a plaintiff [alleging a claim for negligent misrepresentation] must be able to point to evidence indicating that the speaker of the misrepresentation 'knew, or should have known, [the] statements were untrue *at the time they were made.'*" *Soares v. Altice Tech. Servs. US, LLC*, 2021 WL 3475704, at *6 (D. Conn. 2021) (quoting *Bellsite Dev., LLC v. Town of Monroe*, 155 Conn. App. 131, 152 (2015) (emphasis in original)). Even if I assume ATS made some form of representation to Garcia about its progressive discipline policy, Garcia does not point to any evidence that ATS knew or should have known that this representation was untrue at the time that it was made. Accordingly, I will grant ATS's motion for summary judgment as to Garcia's negligent misrepresentation claim.

---

[38] Doc. #40-1 at 84.
[39] Doc. #52 at 5 (¶ 12).

### Promissory estoppel

Garcia alleges a claim for promissory estoppel based on his contention that he was fired in violation of ATS's progressive discipline policy.[40] "To prevail in a cause of action sounding in promissory estoppel, a plaintiff must convince the jury that (1) the promisor has failed to honor a clear and definite promise that (2) the promisor reasonably should expect to induce detrimental action or forbearance on the part of the promisee or a third person, and (3) the promise does, in fact, induce detrimental action or forbearance in reasonable reliance on the promise." *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189, 209 (2021).

There is no genuine fact issue to show that ATS failed to honor a clear and definite promise to Garcia about its progressive discipline policy. As noted above, Garcia testified in his deposition that no one at ATS ever told him that ATS had a progressive discipline policy. Moreover, it is undisputed that ATS's policy was not reduced to writing. Garcia does not point to any evidence that there was no less than a clear and definite promise made to him that he would be subject to progressive discipline if the company concluded that he had falsified his subordinates' time records and tried to obstruct the company's investigation of his misconduct. Accordingly, I will grant ATS's motion for summary judgment as to Garcia's promissory estoppel claim.

---

[40] Doc. #15 at 12–13 (¶¶ 1–19).

14

**CONCLUSION**

For the reasons stated above, the Court GRANTS the defendant's motion for summary judgment (Doc. #39). The Clerk of Court shall close this case and shall close *Garcia v. Altice Technical Services US, LLC*, 21-cv-01002, with which this case was consolidated.

It is so ordered.

Dated at New Haven this 3d day of January 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge